1  Stacie L. Brandt, Bar No. 166399
   BOOTH, MITCHEL & STRANGE LLP
2  701 South Parker Street, Suite 6500
   Orange, California 92868
3  (714) 480-8500 fax (714) 480-8533
   slbrandt@boothmitchel.com
4
   Attorneys for Plaintiff
5  THE OHIO CASUALTY INSURANCE COMPANY

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11 | THE OHIO CASUALTY INSURANCE          | Case No.
12 | COMPANY, a New Hampshire             |
   | corporation;                         |
13 |              Plaintiff,              | THE OHIO CASUALTY INSURANCE
   |                                      | COMPANY's COMPLAINT FOR:
14 |       vs.                            |
   |                                      | 1. Breach of Indemnity Contract:
15 | YAKAR CORP., a California corporation;| 2. Reimbursement;
   | and MAKANA AMER, an individual,      | 3. Quia Timet;
16 |                                      | 4. Specific Performance; and
   |              Defendants.             | 5. Declaratory Relief
17 |                                      |

18

19       Plaintiff THE OHIO CASUALTY INSURANCE COMPANY allege as follows:

20                    **JURISDICTION AND VENUE**

21       1.      Plaintiff THE OHIO CASUALTY INSURANCE COMPANY ("OHIO

22 CASUALTY") is a corporation incorporated under the laws of the State of New

23 Hampshire, with its principal place of business in Boston, Massachusetts. All Defendants

24 are citizens of Los Angeles County, California. This Court has original jurisdiction under

25 28 U.S.C § 1332, in that this action is an action between citizens of different states in

26 which the matter in controversy exceeds, exclusive of costs and interest, seventy-five

27 thousand dollars.

28       2.      Venue is proper in this judicial district because most of the Defendants

                              COMPLAINT

are citizens or maintain their principal place of business in the County of Orange, State of California, and the construction projects that are the subject of this action took place in the California Counties of Los Angeles and Orange.

## GENERAL ALLEGATIONS

3.   OHIO CASUALTY is incorporated under the laws of the State of New Hampshire and maintains its statutory address and principal place of business at 175 Berkeley Street, Boston, MA 02116.  Its primary and domiciliary regulator is the Massachusetts Department of Insurance.

a.   Liberty Mutual Group is the ultimate 100 percent parent of OHIO CASUALTY. Liberty Mutual Group is the 100 percent parent of Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company and Employers Insurance Company of Wausau. Liberty Mutual Insurance Company owns 78%, Liberty Mutual Fire Insurance Company owns 6%, Peerless Insurance Company owns 8%, and Employers Insurance Company of Wausau owns 8% of the stocks of Ohio Casualty Corporation. Ohio Casualty Corporation owns 100% of the stock of OHIO CASUALTY.

b.   The leadership of Liberty Mutual Insurance Company, which directs the business of OHIO CASUALTY, is located at its corporate headquarters, located at 175 Berkeley Street in Boston, Massachusetts. The leadership includes at its highest level a "management team" that, at the time this action was commenced, consisted of sixteen officers, of which thirteen resided in Massachusetts and fourteen worked and operated out of Boston, Massachusetts. These include the Chairman and Chief Executive Officer, the President, and the Executive Vice President of each of the three strategic business units through which the Company operates domestically: Commercial Markets, Personal Markets and Agency Markets.  None reside in, or work out of, California.

c.   It is through these business units that the overall direction, control and coordination of the business, legal and regulatory activities are carried out. Furthermore, the policies, objectives, investment and business planning decisions all

emanate from the heads of these units and from the Chairman and President, all of whom work at the Boston, Massachusetts, facilities for Liberty Mutual Group and its subsidiaries.

d.      The ultimate decisions concerning the governance and oversight of the affairs of OHIO CASUALTY rest with its Board of Directors, most of whom reside in Massachusetts, and which regularly meets at 175 Berkeley Street, Boston, Massachusetts, for the purpose of conducting governance and oversight of the affairs of the Company. None of the members of the Board reside in, or work out of, California.

e.      OHIO CASUALTY's core executive and major administrative functions are carried out in Boston, Massachusetts.

f.      The core executive functions include determining the distribution of the Company's financial and personnel resources within the various commercial markets in which the Company operates; budgetary controls for Liberty Mutual Insurance Company's major components and their subordinate units, which includes OHIO CASUALTY; development of new insurance products; modification of existing insurance products; long term strategic planning; general public relations, including control of marketing instruments and advertising and media communications; development of internal operational and personnel policies; and development of  policies and procedures for dealing with the many independent agents and brokers that OHIO CASUALTY retains or partners with.

g.      The core administrative functions include development of the methods and procedures of dealing with the various State regulatory agencies and complying with Federal and local statutes, ordinances and regulations; compliance with Federal and State governance statutes; licensing requirements; oversight of merger and acquisition activities; and development and supervision of Liberty Mutual Insurance Company's internal management procedures and the operation and rules relating to the its safety plans, its pension and retirement policies; and its health care plans and programs.

h.     While OHIO CASUALTY maintains several regional and local offices in California, it performs none of the core executive and administrative functions or major administrative operations described above in California.

4.     At all relevant times, OHIO CASUALTY was duly licensed to conduct surety business in the State of California. OHIO CASUALTY is an admitted surety in the State of California, among other jurisdictions, and issues contract surety bonds, among other bonds, in the course of its business.

5.     OHIO CASUALTY is informed and believes and alleges that Defendant YAKAR CORP. ("YAKAR") is a California corporation with its principal place of business in the City of Covina, County of Los Angeles, State of California, and all of its business activities are located in California.

6.     OHIO CASUALTY is informed and believes and alleges that Defendant MAKANA AMER is an individual and a citizen and resident of the City of Glendora, County of Los Angeles, State of California, and is subject to its jurisdiction and laws. MAKANA AMER was and is the president of YAKAR.

## THE GENERAL AGREEMENT OF INDEMNITY

7.     On or about April 27, 2009, Defendants YAKAR and MAKANA AMER executed a General Agreement of Indemnity ("Indemnity Agreement") in favor of OHIO CASUALTY, in partial consideration for execution of surety bonds. A true and correct copy of the Indemnity Agreement is attached to this Complaint as **Exhibit 1** and incorporated by this reference.

8.     Under the opening paragraph of the Indemnity Agreement, it benefits "any other company that is part of or added to the Liberty Mutual Group, severally not jointly, and for which Liberty Mutual Surety underwrites surety business." OHIO CASUALTY is among the sureties benefitted by the Indemnity Agreement.

9.     Under paragraph SECOND: INDEMNITY of the Indemnity Agreement, the Defendants are obligated to "exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all liability for losses, fees, costs and

expenses of whatsoever kind or nature including, but not limited to, pre- and post-judgment interest at the maximum rate permitted by law accruing from the date of a breach . . . , court costs, counsel fees, accounting, engineering and any other outside consulting fees" and all loss incurred as a result of issuing bonds on behalf of YAKAR.

10.     The Indemnity Agreement further provides in paragraph SECOND: INDEMNITY that the Indemnitors will deposit collateral with the Surety upon demand:

> . . . If the Surety determines, in its sole judgment, that potential liability exists for loses and/or fees, costs and expenses for which the Indemnitors and Principals will be obliged to indemnify the Surety under the terms of this Agreement or Other Agreements, the Indemnitors and/or Principals shall deposit with the Surety, promptly upon demand, a sum of money equal to an amount determined by the Surety or collateral security of a type and value satisfactory to the Surety, to cover that liability, whether or not the Surety has:          (a) established or increased any reserve; (b) made any payments; or  (c) received any notice of any claims therefor. At the Surety's sole option, such collateral shall be in addition to and not in lieu of any other collateral that has been previously provided to the Surety. The Surety shall have the right to use any collateral, or any part thereof, in payment or settlement of any such liabilities for which the Indemnitors and Principals would be obliged to indemnify the Surety under the terms of this Agreement or Other Agreements. . . .

**BONDS AND PREVAILING WAGE CLAIMS AGAINST**
**YAKAR AND OHIO CASUALTY**

11.     Defendant YAKAR requested that OHIO CASUALTY issue surety bonds on YAKAR's behalf in connection with several construction projects. True and correct

5

copies of the Bonds against which claims have been made are attached to this Complaint as **Exhibit 2** and incorporated by this reference.

12. After OHIO CASUALTY issued the Bonds, OHIO CASUALTY was served with two lawsuits filed by three former employees of YAKAR; the lawsuits allege claims on the Bonds:

    a. *David Carlos Prado v. YAKAR*, Los Angeles Superior Court Case No. KC067987, filed on October 22, 2015 ("Prado Action"); and

    b. *Robert Torres v. YAKAR*, Los Angeles Superior Court Case No. KC068853, filed on November 14, 2016 ("Torres Action").

13. The Prado and Torres Actions were not consolidated. Trial in the Torres Action is set to for January 30, 2018, and trial in the Prado Action is set for February 27, 2018. The Torres Action and the Prado Action are sometimes referred to together here as "*Torres*."

14. **Torres Settlement Demand.** On November 9, 2017, the Torres plaintiffs served a settlement demand in the total amount of $889,199.79, of which $442,376.90 was allocated to OHIO CASUALTY. In addition, the Torres plaintiffs' demand contemplated attorney fees to be determined by motion.

15. **Torres Verified Claims.** OHIO CASUALTY served interrogatories to the Torres plaintiffs, and on December 9, 2017, the Torres plaintiffs served responses, followed by plaintiffs' verifications received on January 2, 2018.  The verified responses state the following amounts of wages are owed by YAKAR on projects for which OHIO CASUALTY issued Bonds:

| | |
|---|---|
| Torres claims wages of | $23,938.77 |
| Prado claims wages of | $21,997.88 |
| Vallejo claims wages of | $41,171.92 |
| Verified wage claims: | $87,108.57 |

16. The Torres plaintiffs' discovery responses state additional amounts that are claimed against OHIO CASUALTY, items which OHIO disputes:

6

COMPLAINT

| | | |
|---|---|---|
| Verified wage claims on OHIO Bonds: | $87,108.57 |
| Meal and rest penalties on OHIO Bonds: | $30,892.30 |
| Interest 10% on OHIO Bonds (est. 2 years) | <u>$23,600.17</u> |
| Total claims against OHIO Bonds | $141,600.87 |

Plus unknown attorney fees

17.    OHIO CASUALTY is arranging for payment of the Torres plaintiffs' verified wage claims of $87,108.57.

18.    OHIO CASUALTY is informed and believes and alleges that no amount of the prevailing wage claims by the Torres plaintiffs has been paid as of the date of filing this Complaint.

19.    OHIO CASUALTY has incurred the sum of at least $18,700 through December 31, 2017, for attorney fees and costs to defend against the claims and lawsuits by the *Torres* plaintiffs.

20.    **Collateral Demand.** On November 10, 2017, OHIO CASUALTY, through counsel, caused to be sent to the Defendants a letter demanding the Defendants immediately post $990,609.90 cash as collateral to OHIO CASUALTY, or a cash equivalent acceptable to OHIO CASUALTY on or before November 20, 2017. A true and correct copy of OHIO CASUALTY's collateral demand letter to Defendants is attached to this Complaint as **Exhibit 3** and incorporated by this reference. (The indemnity agreement and other attachments to the collateral demand letter have been removed from **Exhibit 3**.)

21.    To date, the Defendants have failed to comply with OHIO CASUALTY's demands, as set forth in the November 10, 2017 collateral demand letter.

22.    The Defendants have failed and refused, and continue to fail and refuse, to pay any amount to OHIO CASUALTY for indemnity, to hold OHIO CASUALTY harmless, or to post with OHIO CASUALTY collateral in any amount.

///

///

**FIRST CLAIM FOR RELIEF**

**(Breach of the Indemnity Agreement against All Defendants)**

23.     OHIO CASUALTY incorporates by reference paragraphs 1 through 22 as though set forth in full.

24.     OHIO CASUALTY issued the Bonds on behalf of YAKAR for the Projects. OHIO CASUALTY has received claims against the Bonds and anticipates that additional claims may be made against the Bonds

25.     Claims were made against the Bonds by former employees the Torres plaintiffs. Following investigation, OHIO CASUALTY received discovery responses from the Torres plaintiffs that included verified claims for wages. OHIO CASUALTY is in the process of paying $87,108.57 to the Torres plaintiffs.

26.     OHIO CASUALTY has incurred to date more than $18,700 for attorney fees and costs to investigate, defend against, and resolve claims against Bonds.

27.     OHIO CASUALTY is entitled to interest on amounts it has paid out.

28.     OHIO CASUALTY anticipates that additional claims may be made against the Bonds. OHIO CASUALTY will incur additional costs and attorney fees related to the investigation and defense of these claims.

29.     Despite demand, the Defendants have failed and refused to and continue to fail and refuse to indemnify and hold OHIO CASUALTY harmless for its losses under the terms of the Indemnity Agreement, thereby breaching their obligations under the Indemnity Agreement.

30.     OHIO CASUALTY has performed all of the terms, covenants, and conditions required on its part to be performed under the terms of the Indemnity Agreement, or has been excused from doing so by the Defendants.

31.     As a direct and proximate result of the breach of the Indemnity Agreement by the Defendants, OHIO CASUALTY has incurred losses and expenses, including costs and attorney fees, and will continue to incur losses and expenses in an amount according to proof, along with attorney fees, expenses, and costs incurred in

8

1  prosecuting this action.

2                    **SECOND CLAIM FOR RELIEF**

3              **(Reimbursement against Defendant YAKAR)**

4         32.   OHIO CASUALTY incorporates by reference paragraphs 1 through 31 as

5  though set forth in full.

6         33.   Under section 2847 of the California Civil Code and common law

7  principles, if a surety satisfies the principal obligation, or any part thereof, whether with

8  or without legal proceedings, the principal is bound to reimburse what the surety has

9  disbursed, including necessary costs and expenses.

10        34.   Defendant YAKAR is the principal on the Bonds.

11        35.   Claims were made against the Bonds by YAKAR's former employees,

12  the Torres plaintiffs. Following investigation, OHIO CASUALTY received discovery

13  responses from the Torres plaintiffs that included verified claims for wages. OHIO

14  CASUALTY is in the process of paying $87,108.57 to the Torres plaintiffs.

15        36.   OHIO CASUALTY is informed and believes that the Torres  plaintiffs

16  assert prevailing wage claims against YAKAR in the amount of at least $800,000, and

17  that they assert claims for a portion of that from OHIO CASUALTY based on their

18  timely claims against certain of the Bonds.

19        37.   Defendant YAKAR, as principal on the Bonds issued by OHIO

20  CASUALTY, is obligated to reimburse OHIO CASUALTY under common law

21  principles of suretyship. OHIO CASUALTY is entitled to recover from bond principal

22  YAKAR the entire amount paid out in claims, in an amount according to proof, which is

23  expected to be at least $87,108.57 as OHIO CASUALTY pays the Torres plaintiffs'

24  verified wage claims.

25                    **THIRD CLAIM FOR RELIEF**

26              **(Quia Timet against All Defendants)**

27        38.   OHIO CASUALTY incorporates by reference paragraphs 1 through 37 as

28  though set forth in full.

                                    9

39.     The Defendants are obligated under the doctrine of Quia Timet to reimburse OHIO CASUALTY for all losses and expenses that have been incurred and will be incurred by OHIO CASUALTY as a consequence of issuing the Bonds.

40.     OHIO CASUALTY believes that, based upon the Defendants' unwillingness to indemnify OHIO CASUALTY and their failure to post collateral, that Defendants will attempt to avoid their obligation to reimburse OHIO CASUALTY for all losses and expenses that have been incurred and will be incurred by OHIO CASUALTY as a consequence of issuing the Bonds.

41.     OHIO CASUALTY has no adequate remedy at law for the injuries suffered and the injuries it will continue to suffer. OHIO CASUALTY is informed, believes, and alleges that the Defendants have exhibited a willingness to evade their obligations and may transfer assets in derogation of the legal and equitable rights of OHIO CASUALTY. If the Defendants are not enjoined immediately from transferring their assets, the assets may be disposed of permanently, and the Defendants will render themselves insolvent, thereby irreparably harming OHIO CASUALTY.

42.     As a proximate result of the conduct of the Defendants, OHIO CASUALTY has been or will be damaged so long as the Defendants are able to evade their obligations to OHIO CASUALTY by transferring their assets. The full amount of this damage is not presently known by OHIO CASUALTY, which will amend its complaint to state this amount when the same becomes known to it, or on proof of damages.

43.     OHIO CASUALTY is entitled to receive a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining the Defendants, as well as their agents, servants, assignees, employees, officers, and all persons or entities acting thereunder, in concert with, or for them, from transferring any assets absent further court order.

///

///

**FOURTH CLAIM FOR RELIEF**

**(Specific Performance against All Defendants)**

44.     OHIO CASUALTY incorporates by reference paragraphs 1 through 43 as though set forth in full.

45.     OHIO CASUALTY issued the Bonds on behalf of YAKAR at the request of the YAKAR.

46.     OHIO CASUALTY has incurred and will continue to incur losses and expenses by virtue of and as a direct consequence of its issuance of the Bonds and in satisfying YAKAR's obligations under the Bonds.

47.     OHIO CASUALTY is entitled to a judgment compelling the Defendants to specifically perform pursuant to the terms of the Indemnity Agreement by:

a.     indemnifying OHIO CASUALTY for all of its losses, expenses, costs, and attorney fees that have been incurred, and continue to be incurred, in connection with its issuance of the Bonds; and

b.     depositing collateral with OHIO CASUALTY in an amount as determined by SURETY sufficient to discharge any loss or anticipated loss; OHIO CASUALTY demanded that Defendants post collateral in the sum of $975,376.90. As OHIO CASUALTY's potential loss is liquidated, the amount of its indemnity demand will increase, and the amount of its collateral demand will decrease by the same amount.

48.     OHIO CASUALTY's remedy at law is inadequate, in that OHIO CASUALTY is exposed to liability that is not liquidated at this time.

**FIFTH CLAIM FOR RELIEF**

**(Declaratory Relief against All Defendants)**

49.     OHIO CASUALTY incorporates herein the allegations of paragraphs 1 through 48, inclusive, of this Complaint.

50.     An actual controversy has arisen and now exists between OHIO CASUALTY and Defendants, and each of them, insofar as OHIO CASUALTY contends that Defendants, and each of them, have an obligation to reimburse, indemnify, exonerate

and hold harmless OHIO CASUALTY from all claims arising from issuing the Bonds, pursuant to the terms of the Indemnity Agreement.

51.    OHIO CASUALTY is informed and believes that Defendants deny such obligations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff THE OHIO CASUALTY INSURANCE COMPANY pray for judgment, as follows:

ON THE FIRST CLAIM FOR RELIEF:

1.    For all damages proximately caused by the Defendants' breach of the Indemnity Agreement.

2.    For an award of attorney fees expended to prosecute this action;

3.    For costs of suit.

4.    For such other and further relief as is deemed necessary and proper by the Court

ON THE SECOND CLAIM FOR RELIEF:

1.    For damages in an amount equal to the damages OHIO CASUALTY incurs and will incur to satisfy YAKAR's obligations on the Bonds;

2.    For costs of suit in this action; and

3.    For such other and further relief as is deemed necessary and proper by the Court

ON THE THIRD CLAIM FOR RELIEF

1.    A temporary restraining order, preliminary and permanent injunctions enjoining the Defendants, their agents, servants, employees, officers, and assigns, and each of them, from transferring any assets absent further court order;

2.    For costs of suit in this action; and

3.    For such other and further relieve as is deemed necessary and proper by the Court

///

ON THE FOURTH CLAIM FOR RELIEF

1. For an order compelling Defendants to comply with the terms of the Indemnity Agreement by (1) reimbursing OHIO CASUALTY for damages OHIO CASUALTY has incurred and will continue to incur to satisfy YAKAR's obligations as the principal on the Bonds; and (2) depositing collateral in an amount as determined by OHIO CASUALTY to be sufficient to discharge any loss or anticipated loss; OHIO CASUALTY demanded that Defendants post collateral in the sum of $975,376.90.

2. For all damages proximately caused by the Defendants' breach of the Indemnity Agreement;

3. For interest thereon at the legal rate;

4. For reasonable attorney fees and costs incurred in this action, according to proof;

5. For cost of suit; and

6. For such other and further relief as the Court may deem necessary and proper.

ON THE FIFTH CLAIM FOR RELIEF:

1. For a judicial determination of the parties' respective rights and obligations under the Indemnity Agreement;

2. For OHIO CASUALTY's attorneys' fees and costs incurred in the action; and

3. For such other and further relief as the Court may deem just and proper.

Dated: January 2, 2018        BOOTH, MITCHEL & STRANGE LLP


                              /s/ Stacie L. Brandt 166399
                              ——————————————————
                              STACIE L. BRANDT
                              Attorneys for Plaintiffs
                              THE OHIO CASUALTY INSURANCE COMPANY

COMPLAINT